IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEROME SANDBERG                    :

                                     :

    v.                             :    Civil Action No. DKC 24-3257

                                       :

KRISTI NOEM, in her official
capacity as U.S. Secretary of      :
Homeland Security

### MEMORANDUM OPINION

Presently pending and ready for resolution in this Title VII religious accommodation case is the motion to dismiss or, in the alternative, for summary judgment filed by Kristi Noem ("Defendant").[1] (ECF No. 15). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

---

[1] The amended complaint names "Kristy Noem" as the defendant. The U.S. Secretary of Homeland Security spells her first name "Kristi" rather than "Kristy." *Kristi Noem*, U.S. Dep't of Homeland Sec., https://www.dhs.gov/kristi-noem. Secretary Noem is the proper defendant as the head of the relevant agency. 42 U.S.C. § 2000e-16(c).

# I.    Background

## A.    Factual Background

Since 2006, Jerome Sandberg ("Mr. Sandberg" or "Plaintiff") has worked as a Transportation Security Officer at the Baltimore Washington International Thurgood Marshall Airport ("BWI"). (ECF No. 14 ¶ 2). He is an employee of the Transportation Security Administration ("TSA"), an agency housed within the U.S. Department of Homeland Security ("DHS"). (*Id.* ¶¶ 2-3). Mr. Sandberg is Jewish and "observes the Sabbath from sundown on Friday to sundown on Saturday, during which time he cannot work." (*Id.* ¶ 15). "Upon employment in 2006, [Mr. Sandberg] notified [DHS] of his religious observance[.]" (*Id.* ¶ 16). For fifteen years, DHS accommodated Mr. Sandberg's inability to work on the Sabbath by not assigning him shifts that fell on the Sabbath. (*Id.* ¶¶ 17-19).

In fall 2022, Mr. Sandberg's request for religious accommodation was denied.[2] (*Id.* ¶ 21). His new schedule provided

---

[2] It is not clear when the official denial occurred. In paragraph 20 of the amended complaint, he alleges that the denial occurred in September 2022, (ECF No. 14 ¶ 20), but in paragraph 23 he suggests the denial came from Cynthia Rahmani in November 2022, (*Id.* ¶ 23), and the memorandum from Chris Murgia that Plaintiff calls the "decision letter" likewise came in November 2022, (*Id.* ¶ 35; ECF No. 15-2, at 2). At this stage, the precise date of the denial is not important.

him Thursday and Friday off, but not Saturday. (*Id.* ¶ 26). He alleges that "new management assumed control and informed [him] that they could no longer accommodate his religious observance" because such accommodation would violate the seniority-based bidding system enshrined in the Collective Bargaining Agreement ("CBA"). (*Id.* ¶¶ 20–21, 33). Chris Murgia, the Federal Security Director at BWI, instead offered in a letter to Mr. Sandberg ("Murgia letter") several other options "to secure the time off that [he] need[s] for [his] religious observances." (ECF No. 15-2, at 2). Mr. Murgia informed Mr. Sandberg that he could pursue shift or schedule trades with his co-workers or request leave. (*Id.*). DHS had "created electronic shift and schedule trade boards" to facilitate voluntary shift and schedule swaps. (*Id.*). Mr. Sandberg alleges that these "alternative accommodations" were "no[t] feasible." (ECF No. 14 ¶ 39).

Thereafter, despite his continued request for religious accommodation, Mr. Sandberg "was scheduled to work every Saturday." (*Id.* ¶ 22). Over a six-month period, Mr. Sandberg successfully traded his Saturday shift on only two occasions. (*Id.* ¶ 27). Consequently, Mr. Sandberg "was required to use his accrued leave to avoid working on Saturdays" during that six-month period, resulting in his use of leave on 92% of Saturdays. (*Id.* ¶ 28).

3

Once he depleted his accrued leave, "he was unable to take Saturdays off, resulting in a loss of 20% of his pay during those weeks." (*Id.* ¶ 29). On these days, presumably, Mr. Sandberg took unpaid leave. He contends that "be[ing] forced to use annual and sick leave" has "plac[ed] his employment at risk." (*Id.* ¶ 40).

It is not clear on the face of the complaint how long the TSA scheduled Mr. Sandberg to work on Saturday. Defendant reports that, at least as of May 5, 2024, Mr. Sandberg was no longer scheduled to work on Saturdays. (ECF No. 20, at 3 n.4).

**B.  Procedural Background**

On December 13, 2022, Mr. Sandberg initiated contact with an Equal Employment Opportunity Counselor, before filing a formal complaint of religious discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 19, 2023. (ECF Nos. 14 ¶¶ 9-10; 15-6, at 3). The EEOC denied Mr. Sandberg's claim on September 20, 2024, concluding that DHS "made a good faith effort to reasonably accommodate [Mr. Sandberg's] religious beliefs," and that Mr. Sandberg's requested accommodation would impose an undue hardship on DHS. (ECF No. 15-5, at 4). Mr. Sandberg then received a final order denying his claim from DHS's Office of Civil Rights and Civil Liberties on October 21, 2024. (ECF Nos. 14 ¶ 12; 15-6, at 2, 4).

4

Plaintiff filed the operative complaint on April 10, 2025,[3] alleging a single count of religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. (ECF No. 14). He seeks declaratory, injunctive, and compensatory relief. (*Id.*). On April 21, 2025, Defendant filed a motion to dismiss for failure to state a claim or for summary judgment. (ECF No. 15). On May 2, 2025, Plaintiff filed his opposition. (ECF No. 17). After receiving an extension of time, Defendant filed her reply on June 5, 2025. (ECF No. 20).

## II.  Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The court "must accept the complaint's factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469 (4th Cir. 2025) (citing *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024)). A plaintiff's complaint must only satisfy the standard of Rule

---

[3] Plaintiff filed his original complaint on November 11, 2024. (ECF No. 1). Therefore, his complaint was timely under Title VII. 42 U.S.C. § 2000e-16(c) (requiring a federal employee to file suit in federal court within ninety days of receiving notice of final agency action on his complaint of discrimination). His amended complaint is the operative complaint.

8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).  A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays v. Sprinkle*, 992 F.3d 295, 299–300 (4th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).

## III. Analysis

### A.  Exhibits

As a threshold matter, the court must determine which extrinsic documents may be considered on a motion to dismiss.  "As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage[.]" *Faulkenberry v. U.S. Dep't of Def.*, 670 F.Supp.3d 234, 249 (D.Md. 2023) (quoting *Reamer v. State Auto. Mut. Ins. Co.*, 556 F.Supp.3d 544, 549 (D.Md. 2021), *aff'd*,

No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022)).  "However, 'the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is integral to the complaint and there is no dispute about the document's authenticity.'"  *Id.* (quoting *Reamer*, 556 F.Supp.3d at 549).  "[F]or an extrinsic document to be integral to a complaint the document must either give rise to a claim or be the basis of an element of a claim."  *Defs. of Wildlife v. Boyles*, 608 F.Supp.3d 336, 345 (D.S.C. 2022); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

The only extrinsic document necessary to decide this case is the Murgia letter denying Plaintiff's request for religious accommodation in the form of Saturdays off, which is referenced in the Amended Complaint and attached to Defendant's motion to dismiss.  Plaintiff does not dispute the authenticity of the document.  Moreover, the Murgia letter is integral to the complaint.  The denial and accommodations letter reaffirmed that Plaintiff was scheduled to work on the Sabbath and informed him that he could use leave to avoid that consequence, which is the basis of the discipline Plaintiff alleges he suffered.  Accordingly, the court will consider the Murgia letter without

converting Defendant's motion to dismiss into a motion for summary judgment.[4]  As will be explained, the accommodations offered were reasonable.

**B.  Plaintiff Fails to State a Failure-to-Accommodate Claim**

Title VII mandates that "[a]ll personnel actions affecting employees [of federal executive departments] . . . shall be made

---

[4] Even if it were more appropriate to convert Defendant's motion into one for summary judgment, Fed.R.Civ.P. 12(d), Defendant would be entitled to summary judgment.  Two requirements must be met before converting a motion to dismiss into one for summary judgment: (1) actual notice to the nonmovant that the conversion may occur, and (2) reasonable opportunity for discovery.  *See Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).  The first requirement is met when the movant styles his motion to dismiss as one for summary judgment in the alternative.  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998).  Here, Defendant styled her motion as a "Motion to Dismiss the Amended Complaint or, in the Alternative, for Summary Judgment." (ECF No. 15, at 1).  The second requirement is met when the nonmovant fails "to oppose the motion on the grounds that more time was needed for discovery," generally through a Rule 56(d) affidavit or declaration.  *Sager v. Housing Comm'n of Anne Arundel Cnty.*, 855 F.Supp.2d 524, 542 (D.Md. 2012) (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)).  Here, Plaintiff failed to request time for discovery through a Rule 56(d) filing or otherwise.  The only evidence Plaintiff puts forward is his verified complaint (which includes a page of the CBA).  *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes[.]").  Nothing in Plaintiff's verified complaint raises a dispute of material fact.  As a matter of law, the accommodations Defendant provided Plaintiff were reasonable.  Therefore, the result would be the same if the issue were resolved on summary judgment.

free from any discrimination based on . . . religion." 42 U.S.C.
§ 2000e-16(a). When interpreting this provision of Title VII, the
Fourth Circuit has incorporated the private employment standard in
42 U.S.C. § 2000e-2(a)(1). *Baqir v. Principi*, 434 F.3d 733, 742
(4th Cir. 2006) ("[T]he standards governing private-sector illegal
claims [are] applied to claims brought by federal employees."
(citing *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981) (en
banc))), *abrogated on other grounds by*, *E.E.O.C. v. Abercrombie &
Fitch Stores, Inc.*, 575 U.S. 768 (2015). The private employment
standard for religious accommodation claims makes it "unlawful .
. . for an employer . . . to discriminate against any individual
with respect to his compensation, terms, conditions, or privileges
of employment, because of such individual's . . . religion." 42
U.S.C. § 2000e-2(a)(1). Ordinarily, "[t]o prove a claim under the
disparate treatment theory, an employee must demonstrate that the
employer treated her differently than other employees because of
her religious *beliefs*." *Chalmers v. Tulon Co. of Richmond*, 101
F.3d 1012, 1017 (4th Cir. 1996). Congress, however, defines
religion in Title VII to encompass "all aspects of religious
observance and practice, as well as belief, unless an employer
demonstrates that he is unable to reasonably accommodate to an
employee's . . . religious observance or practice without undue

hardship on the conduct of the employer's business." 42 U.S.C. §
2000e(j). Accordingly, Title VII requires that an employer
reasonably accommodate an employee's religious observance or
practice unless doing so would cause the employer undue hardship.
*See E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312
(4th Cir. 2008) (citing *Trans World Airlines, Inc. v. Hardison*, 432
U.S. 63, 75 (1977)).

> Under Title VII, employers have a duty to
> "make reasonable accommodation for the
> religious observances of its employees, short
> of incurring an undue hardship." *EEOC v.
> Consol Energy, Inc.*, 860 F.3d 131, 141 (4th
> Cir. 2017) (quotation and citation omitted).
> "[A]n employee must prove that: (1) he or she
> has a bona fide religious belief that
> conflicts with an employment requirement; (2)
> he or she informed the employer of this
> belief; and (3) he or she was disciplined for
> failure to comply with the conflicting
> employment requirement." *Id.* (citation and
> quotation omitted). The Fourth Circuit
> "employ[s] a burden shifting scheme akin to
> the one articulated in *McDonnell Douglas Corp.
> v. Green*, 411 U.S. 792 (1973)." *Johnson v.
> Wheeling-Pittsburgh Steel Corp.*, 279 F. App'x
> 200, 207 (4th Cir. 2008). Once a plaintiff
> establishes a *prima facie* case of a failure to
> accommodate, "the burden then shifts to the
> employer to show that it could not reasonably
> accommodate the plaintiff's religious needs
> without undue hardship." *Id.* The employer
> "must demonstrate either (1) that it provided
> the plaintiff with a reasonable accommodation
> for his or her religious observances or (2)
> that such accommodation was not provided

>    because it would have caused undue hardship."
>    *Id.*

*Niederberger v. Wegmans Food Markets, Inc.*, No. 23-cv-2759-JKB, 2024 WL 2866609, at *3 (D. Md. June 6, 2024).  Stated otherwise:

>    [P]roving the reasonableness of the proposed
>    accommodation or undue burden is sufficient to
>    escape liability.  If an employer persuades
>    the court that its proposed accommodation was
>    reasonable, the court "need not examine" the
>    undue burden claim.  *Firestone*, 515 F.3d at
>    312.

*U.S. Equal Emp. Opportunity Comm'n v. Greyhound Lines, Inc.*, 554 F.Supp.3d 739, 752 (D. Md. 2021).

### 1.    Plaintiff's Plausible *Prima Facie* Case

>    To survive a motion to dismiss, a
>    plaintiff need not plead a *prima facie* case of
>    discrimination under Title VII.  *Swierkiewicz
>    v. Sorema N.A.*, 534 U.S. 506, 515 (2002); *see
>    also Bing v. Brivo Sys., LLC*, 959 F.3d 605,
>    616 (4th Cir. 2020).  Instead, the plaintiff
>    must "allege[] facts that plausibly state a
>    violation of Title VII 'above a speculative
>    level.'"  *Bing*, 959 F.3d at 617 (quoting
>    *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187,
>    190 (4th Cir. 2010)).

*Polk v. Montgomery Cnty. Pub. Schs.*, No. 24-cv-1487-DLB, 2025 WL 240996, at *18 (D. Md. Jan. 17, 2025).  To do so, the plaintiff must "present[] allegations sufficient to reasonably infer a *prima facie* case of discrimination under the *McDonnell Douglas* framework." *Niederberger*, 2024 WL 2866609, at *3 (quoting *Walton*

*v. Greensville Corr. Ctr.*, No. 12–cv–628, 2015 WL 2452451, at *10 (E.D.Va. May 21, 2015)); *see Coleman*, 626 F.3d at 190–91 (assessing whether the plaintiff plausibly alleged elements of a *prima facie* case); *accord Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) ("[T]he elements of a *prima facie* case may be used as a prism to shed light upon the plausibility of the claim."); *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) ("The facts alleged [in a Title VII complaint] must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation.").

Defendant does not dispute that Plaintiff alleges facts sufficient for the first two elements of his *prima facie* case. Plaintiff has a *bona fide* religious belief that prohibits him from working on the Sabbath, which conflicts with the work requirement that he work on the Sabbath. (ECF Nos. 14 ¶¶ 15, 22; 15-2, at 1). Plaintiff informed his employer of his religious belief. (ECF Nos. 14 ¶¶ 16, 20; 15-2, at 1).

The parties do dispute, however, whether Plaintiff alleges sufficient facts for the third element of discipline for failure to comply with the requirement that he work on the Sabbath. Title VII prohibits discipline on the basis of religion that affects the employee's "compensation, terms, conditions, or privileges of

employment." 42 U.S.C. § 2000e-2(a)(1).  In a failure-to-accommodate case, "the discipline at issue is usually 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities.'" *Abdelkader v. Sears, Roebuck & Co.*, 780 F.Supp.2d 389, 395 (D.Md. 2011) (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999), *abrogated on other grounds by*, *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024)).

Plaintiff alleges that he "faced an adverse action of lost leave," (ECF No. 14 ¶ 55), because he was unable to trade his Saturday shift on all but two occasions and had to use leave—that he otherwise would have retained—to avoid working on the Sabbath, (*Id.* ¶¶ 27–28).  He further alleges that when he depleted his accrued leave, he was forced to take unpaid leave to avoid working on the Sabbath, resulting in a loss of pay for those weeks. (*Id.* ¶ 29).  In other words, he contends that he suffered a decrease in pay and benefits.  Defendant argues that "being required to use leave to avoid working on religious holidays is not a form of discipline or adverse action." (ECF No. 15-1, at 8).  Plaintiff responds in his opposition that he only needs to show that his employer "enforced its requirement against [him]," and that it is "undisputed" that his employer did enforce the requirement that he

13

work on the Sabbath. (ECF No. 17, at 4–5 (citing EEOC Decision No. 22-1272, 2023 WL 5623796, at *2 (Aug. 14, 2023))).

As a threshold matter, Plaintiff elides a critical distinction in his recitation of the law governing the third element. Whether the employer *enforced* its requirement is a separate matter from whether such enforcement constitutes cognizable *discipline*. Enforcement is too broad a term and does not itself directly address the effect on the employee's "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). Although it is undisputed that DHS did not change Plaintiff's schedule to give him Saturdays off and, in that sense, enforced its requirement, Defendant does dispute that requiring Plaintiff to take leave to avoid working on the Sabbath constitutes discipline. Plaintiff erroneously characterizes the third element and its nature as undisputed in his briefing, but he does argue briefly in his opposition that the requirement that he use leave "constituted an adverse action." (ECF No. 17, at 11). The remaining question is whether being required to take leave constitutes discipline.[5]

---

[5] Both parties appear to proceed on the logic that Plaintiff alleges that he was effectively *required* to take leave because he was unable to trade shifts on all but two occasions.

14

The purported adverse actions can be divided into required paid leave, which Plaintiff took first, and required unpaid leave, to which Plaintiff ultimately resorted.

To require that an employee use paid leave for religious observance does not satisfy the discipline element. *St. Juste v. Metro Plus Health Plan*, 8 F.Supp.3d 287, 316 (E.D.N.Y. Mar. 28, 2014) ("The case law is clear that requiring an employee to use *paid* leave to attend religious services does not constitute an adverse employment action." (collecting cases)), *abrogated on other grounds by*, *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015). As one court explained, in such circumstance the employee is "not deprived of a material benefit, he simply [chooses] to use the benefit in a particular way." *O'Neill v. City of Bridgeport Police Dep't*, 719 F.Supp.2d 219, 226 (D.Conn. 2010). In other words, being required to use paid leave for religious observance does not affect the terms and conditions of employment because the employee is paid for the same number of days of no work as other employees. It is irrelevant that the employee cannot put that paid time off toward nonreligious activities for as many days as other employees.

It is a closer question whether requiring that an employee use *unpaid* leave for religious observance satisfies the discipline

15

element. *St. Juste*, 8 F.Supp.3d at 317 ("[I]t is less clear that being required to take *unpaid* leave for religious observances comprises an adverse action for purposes of a failure to accommodate claim." (collecting cases)). Courts have diverged in their approach to this question. For example, one court "assume[d] without deciding that being forced to take unpaid leave to observe the Sabbath, when that results in a reduced work schedule and a loss in pay, could constitute an adverse action sufficient to establish a *prima facie* case of religious discrimination." *Guy v. MTA N.Y.C. Transit*, No. 10-cv-1998, 2012 WL 4472112, at *6 (E.D.N.Y. Aug. 6, 2012) (citing *O'Neill*, 719 F.Supp.2d at 227), *report and recommendation adopted by*, 2012 WL 4472098 (E.D.N.Y. Sep. 26, 2012).[6] The United States Court of Appeals for the Sixth Circuit, on the other hand, has held that even being required to take unpaid leave to avoid working on the Sabbath is not discipline because the employee "is simply not being paid for the time he

---

[6] The Supreme Court of the United States in *Philbrook* did not address whether required unpaid leave constitutes discipline. The United States Court of Appeals for the Second Circuit below in *Philbrook* had held that required unpaid leave *did* constitute discipline of the employee because a "choice . . . between giving up a portion of his salary and his religious beliefs" was indistinguishable from "a choice between his job and his religious beliefs." *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 482–83 (2d Cir. 1985).

16

does not work." *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007), *abrogated on other grounds by*, *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).  In other words, the rub is whether reduced pay constitutes discipline when the employee's pay remains commensurate with his work.

The Fourth Circuit has weighed in on this question in the context of the American with Disabilities Act ("ADA").  When evaluating Title VII religious discrimination claims, the Fourth Circuit looks to ADA law on disability discrimination claims.  *See Firestone Fibers*, 515 F.3d at 314 (interpreting "reasonable accommodation" in the Title VII religion context to require the same as "reasonable accommodation" in the ADA context).  In *Thomas v. City of Annapolis*, a police officer's knee injury rendered him unable to work full duty, but he declined the department's offer for him to take a full-time light duty role as a records specialist. 851 F.App'x 341, 343–44 (4th Cir. 2021).  Consequently, the department placed him on unpaid leave. *Id.* at 344.  The Fourth Circuit held, without further discussion, that "being placed on leave without pay" constituted an adverse employment action for the purpose of his ADA failure-to-accommodate claim.  *Id.* at 345. Likewise, courts in this district have concluded that requiring unpaid leave in other Title VII contexts can constitute an adverse

17

action.  *See, e.g.*, *Snyder v. Azar*, No. 18-cv-0511-TDC, 2020 WL 4605223, at *6 (D.Md. Aug. 10, 2020) (holding, in a race, sex, and age discrimination suit, that a five-day suspension without pay constituted an adverse employment action because it caused a "decrease in compensation"), *aff'd sub nom.*, *Snyder v. Becerra*, No. 20-2073, 2021 WL 5505403 (4th Cir. Nov. 24, 2021); *Wiggins v. Balt. Police Dep't*, No. 22-cv-1089-MJM, 2023 WL 6381515, at *6 (D.Md. Sep. 29, 2023) (explaining, in a race and sex discrimination suit, that "placing an employee on leave without pay could be an adverse action," whereas "[p]lacing an employee on paid leave is generally considered not to be an adverse employment action").  Of course, there is an important formal distinction in voluntariness between being placed on unpaid leave and taking unpaid leave to avoid possible employment consequences, as Plaintiff did here.  If the reason unpaid leave can be an adverse action is its effect on the employee's compensation, however, it is unclear why it matters whether the unpaid leave was formally rather than effectively involuntary.

Furthermore, Defendant cites two in-circuit religious accommodation cases that do not distinguish between paid and unpaid leave, but which both conclude that required leave is not disciplinary.  First, she relies principally on *Abdelkader v.*

18

*Sears, Roebuck & Co.*, 780 F.Supp.2d 389 (D.Md. 2011), where a Muslim employee alleged that she was forced to work on her Sabbath eight times, *id.* at 392.  The court determined that "an employer does not commit an adverse act if he permits his employee to take leave to avoid working on a religious holiday, even if the employee feels that requiring her to use leave is unfair and coercive." *Id.* at 395 (citing *Williams v. Harvey*, No. 05-cv-161, 2006 WL 2456406, at *10 (E.D.Va. Aug. 21, 2006)).  Plaintiff seeks to distinguish that case on the basis that the employee there did *not* take leave and instead worked on her Sabbath.  (ECF No. 17, at 11).  Plaintiff's distinction is unavailing because the non-disciplinary nature of required leave was necessary to the court's conclusion that the employee was not *forced* to work on her Sabbath. Second, Defendant points to *Williams v. Harvey*, No. 05-cv-161, 2006 WL 2456406 (E.D.Va. Aug. 21, 2006), which Plaintiff does not address.  There, the court held that "Plaintiff's opinion that she 'feels' that it was unnecessary to use her leave days [for religious observance] fails to establish that she suffered an adverse employment action for failing to comply with her employer's requirements."  *Id.* at *10 (citing *Boone*, 178 F.3d at 255; *Ali v. Alamo Rent-A-Car, Inc.*, 8 F.App'x 156, 159 (4ᵗʰ Cir. 2001)). Neither case clarifies whether paid or unpaid leave was at issue,

19

much less addresses the distinct effects of required paid versus unpaid leave on the employee's compensation.  Accordingly, while they bolster the conclusion that required paid leave is not disciplinary, they cannot resolve the question as it relates to required unpaid leave.

In short, the law is clear that requiring an employee to take paid leave does not satisfy the discipline element of a failure-to-accommodate *prima facie* case.  It is not so clear, however, whether requiring an employee to take unpaid leave satisfies the discipline element.  At this stage, the court cannot dismiss the claim for failure to allege facts plausibly stating a *prima facie* case.

### 2.   Defendant's Reasonable Accommodation Defense

As noted at the outset, once a plaintiff establishes a *prima facie* case, the burden switches to the defendant to show either that it offered reasonable accommodations or that reasonable accommodations would present an undue burden.  Affirmative defenses are not, however, normally addressed on a motion to dismiss:

> When[] . . . "facts sufficient to rule on an affirmative defense . . . are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464

(4th Cir. 2007) (en banc). But this principle applies only in the "relatively rare circumstances" when "all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Id*. (cleaned up). And even to succeed in these rare circumstances, the defendant must show "that the plaintiff's potential [response] to the affirmative defense was foreclosed by the allegations in the complaint." *Id*. at 466.

*L.N.P. v. Kijakazi*, 64 F.4th 577, 585–86 (4th Cir. 2023).

In this area, it is generally the case that the affirmative defenses of reasonable accommodation or undue hardship cannot be resolved on a motion to dismiss because the facts and circumstances of a discrete situation are at play. A recent case in this district illustrates this general point:

> Wegmans make several sound arguments regarding the unreasonableness of Niederberger's requested accommodation and the hardship it would pose. However, the Court must deny Wegmans' Motion to Dismiss at this juncture, because these are issues of fact more appropriately resolved on summary judgment. *See Dean v. Acts Ret. Life Communities*, No. 23-cv-1221-GLR, 2024 WL 964218, at *6 (D. Md. Mar. 6, 2024) ("Whether an undue hardship exists is usually considered an issue of fact to be determined on summary judgment . . . [Defendant] does not identify, and the Court could not locate, a single case where a federal court decided whether an accommodation imposed an undue hardship on a motion to dismiss." (citations omitted)).

Thus, Wegmans' Motion to Dismiss will be denied as to Counts 2 and 7.

*See, e.g.*, *Niederberger*, 2024 WL 2866609, at *4 (footnote omitted).

In the situation in this case, however, the law is clear regarding the combination of alternatives available to accommodate a religious need when a seniority system sets a work schedule, meaning that the defense appears on the face of the complaint. Plaintiff does not dispute that he was offered a combination of shift swaps, paid leave, and unpaid leave. He does, however, dispute the adequacy, efficacy, and legal sufficiency of those accommodations. Plaintiff's arguments present either legal issues or immaterial factual ones, neither of which are fatal to the affirmative defense. As will be seen, it does not matter whether Plaintiff was able to swap shifts or had enough paid leave available to cover all weeks. Instead, the facts readily show that these accommodations were reasonable.

Fourth Circuit precedent squarely governs this case. In *Firestone Fibers*, the employee was a member of the Living Church of God and observed the Sabbath from sundown on Friday to sundown on Saturday. 515 F.3d at 309. The operative collective bargaining agreement used a seniority-based scheduling system. *See id.* Although initially he was not scheduled to work on the Sabbath,

his schedule then changed due to the operation of the seniority system and required him to work on the Sabbath. *Id.* at 309–10. His employer declined to change his schedule because doing so would violate the collective bargaining agreement. *Id.* at 310. Instead, his employer informed him that he would need to "rely on the standard attendance accommodations provided to all employees," including fifteen days of paid leave, eight voluntary shift swaps per year, and sixty hours of unpaid leave. *Id.* The employee used his paid and then unpaid leave but did not swap shifts. *Id.* at 311. He was ultimately terminated for exceeding the maximum amount of unpaid leave available. *Id.* The Fourth Circuit concluded that voluntary shift trades,[7] paid leave, and unpaid leave individually and in combination constituted reasonable accommodations, provided

---

[7] The EEOC regulations expressly provide that voluntary shift trades are a reasonable accommodation. 29 C.F.R. § 1605.2(d)(1)(i). If the employer offers voluntary shift trades, the employer's obligation is to "facilitate the securing of a voluntary substitute with substantially similar qualifications" through, for instance, "a central file, bulletin board or other means for matching voluntary substitutes with positions for which substitutes are needed." *Id.* Plaintiff cites the regulatory language in his papers but argues that DHS has not met its obligation to facilitate shift trades. (ECF No. 17, at 9). The Murgia letter, however, states that DHS "has created electronic shift and schedule trade boards on the TSA-BWI iShare site." (ECF No. 15-2, at 2). Plaintiff does not explain why the trade board is not a bulletin board as contemplated in the governing regulations.

they are not restricted to nonreligious absences. *Id.* at 315–16. Such precedent plainly forecloses Plaintiff's argument that "voluntary schedule trade[s], voluntary shift trade[s], annual leave, and/or other forms of leave[] . . . do not constitute reasonable religious accommodations." (ECF No. 17, at 5).

Here, much like in *Firestone Fibers*, DHS informed Plaintiff that he could swap shifts and use paid and unpaid leave. As with the employee in *Firestone Fibers*, Plaintiff relied on paid and then unpaid leave to avoid working on the Sabbath. DHS did not restrict paid or unpaid leave to nonreligious absences. Just as in *Firestone Fibers*, then, Plaintiff's accommodations were clearly reasonable.

Plaintiff does not address *Firestone Fibers* and instead attacks Defendant's reliance on *Philbrook*. In *Philbrook*, the employee was a member of the Worldwide Church of God, and her religion required her to miss six days of work each year. 479 U.S. at 62–63. The operative collective bargaining agreement provided the employee three days of paid leave for religious observance, but required that she use unpaid leave for the other three days. *See id.* at 63–65. The Court concluded that the three days of required unpaid leave were a reasonable accommodation because they "eliminate[d] the conflict between employment

24

requirements and religious practices by allowing the individual to observe fully religious holy days and require[d] him only to give up compensation for a day that he did not in fact work." *Id.* at 70.  The Court continued that the "loss of income for the period the employee is not at work . . . has no direct effect upon either employment opportunities or job status." *Id.* at 70–71 (quoting *Nashville Gas Co. v. Satty*, 434 U.S. 136, 145 (1977)).  Defendant, and the *Firestone Fibers* court for that matter, rightly seize on this language for the general proposition that required unpaid leave is a reasonable accommodation.  (ECF No. 15-1, at 9 n.4); *Firestone Fibers*, 515 F.3d at 316 (citing *Philbrook*, 479 U.S. at 70–71).  Plaintiff, however, seeks to draw a line between this case and *Philbrook*, arguing that the three days at issue in *Philbrook* pale in comparison to the amount of unpaid leave he has had to take, which is allegedly so substantial as to have an effect on his job status.  (ECF No. 17, at 7–8).  Plaintiff does not allege the number of Saturdays on which he took unpaid leave and only states the obvious, namely that on those weeks he was only paid 80% for the four days he did work.  (*See* ECF No. 14 ¶ 29 ("When Plaintiff's leave balances were depleted, he was unable to take Saturdays off, resulting in a loss of 20% of his pay during those weeks.")).

25

What Plaintiff ignores is that the assessment of
"reasonableness" is not "an area for absolutes." *Firestone Fibers*,
515 F.3d at 313. The *Firestone Fibers* court recognized that "[a]
duty of 'reasonableness' cannot be read as an invariable duty to
eliminate the conflict between workplace rules and religious
practice." *Id.* at 314. The amount of unpaid leave Plaintiff
claims he was "required" to use is not to be viewed in isolation
or in retrospect. At the time Plaintiff expressed a need for a
religious accommodation, Defendant offered a combination of shift
swaps, paid leave, and unpaid leave. That was sufficient.

Plaintiff's other arguments on whether the accommodations
were reasonable similarly fail. First, he argues that the
accommodations were not reasonable because they placed "the entire
burden" on him and the voluntary shift trades proved ineffective.
(*See* ECF No. 17, at 5-6). It is not true that Plaintiff shouldered
the entire burden; DHS set up a shift-trading system and allowed
Plaintiff to take leave potentially without replacement. Also,
there is no rule barring the accommodation from placing some of
the burden on the employee. *See Firestone Fibers*, 515 F.3d at 316
(explaining that the employee's failure to avail himself of shift
trades "does not render the accommodation any less significant in
the reasonableness calculus" (citing *Philbrook*, 479 U.S. at 69)).

26

In fact, "*bilateral* cooperation" is the essence of a reasonable accommodation. *Id.* (emphasis added) (quoting *Philbrook*, 479 U.S. at 69). Moreover, the Supreme Court rejected the argument that "reasonable accommodation" must mean "effective accommodation" in the ADA context, *see US Airways, Inc. v. Barnett*, 535 U.S. 391, 399–401 (2002), and the Fourth Circuit incorporated that logic into Title VII religious accommodation cases in *Firestone Fibers*, 515 F.3d at 314. *See also Hill v. Jamestown-Yorktown Found.*, No. 18-cv-137, 2021 WL 2142694, at *19 (E.D.Va. May 26, 2021) ("[T]hat an employee is ultimately unsuccessful in finding another employee willing to swap shifts does not render the accommodation unreasonable." (citing, inter alia, *Miller v. Drennon*, 966 F.2d 1443, 1992 WL 137578, at *3 (4th Cir. June 19, 1992) (unpublished table decision))). Second, Plaintiff argues that requiring him to take unpaid leave is unreasonable because it effectively allows DHS to employ him at a discount. (ECF No. 17, at 8). DHS does not employ Plaintiff at a discount because it does not receive five days' worth of labor from Plaintiff for four days' worth of money each week. Instead, DHS receives four days of labor from Plaintiff for four days of pay.

Because the facts alleged in the Amended Complaint (supplemented by the document properly supplied by Defendant)

27

clearly show that Defendant has provided reasonable accommodations, Plaintiff has failed to state a claim and the Amended Complaint will be dismissed.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
